UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LOWELL GARDNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:13-CV-00331-GZS |
| ) | |
| RICHARD THOMAS, et als., ) | |
| ) | |
| Defendants. ) | |

### RECOMMENDED DECISION

The defendants removed this action from state court on August 26, 2013, and filed a motion to dismiss the two federal claims set out in the plaintiff's amended complaint as well as one state law claim for negligent infliction of emotional distress. The Court referred the motion for report and recommendation. For reasons that follow, I recommend that the Court grant the motion, exclusively with respect to the federal claims, and remand the balance of the case to the Penobscot County Superior Court.

#### BACKGROUND

This action began as a state court action by Lowell Gardner against a sole defendant, Richard Thomas. Gardner then amended his action to press federal claims against Thomas and three new defendants. Thomas opposed the motion to amend, but the state court granted Gardner leave to add two of the three federal claims he proposed.[1] Thereafter, the defendants removed the action to this Court based on Gardner's assertion of federal claims. The first of the two claims is a due process claim advanced exclusively against Thomas. The second claim is a first amendment retaliation claim pressed against the other defendants.

---

[1] The state court found that it would be futile for Gardner to press a claim under 42 U.S.C. § 1985 and denied leave to add that claim.

On September 19, 2013, the defendants filed in this Court a motion to dismiss the federal claims (count VII and count VIII) and a state law claim of negligent infliction of emotional distress (count VI).  Arguing that the state court already addressed the defendants' claim-dispositive arguments in the context of the defendants' opposition to his motion to amend, Gardner says it is now the law of the case that the challenged counts state claims for which relief may be granted.

## LAW OF THE CASE

In ruling on Gardner's motion to amend, the state court considered the same or similar arguments challenging the merits of the proposed federal claims.  (See Opposition to Motion to Amend, ECF No. 4-18.)  The state court found that the claims were not "so lacking in legal viability" that it should deny the motion to amend.  The state court also ruled that further factual development might reveal that the speech underlying Gardner's first amendment retaliation claim was a matter of public concern and found that the qualified immunity defense did not warrant immediate dismissal because it was an affirmative defense.  (Order on Motion to Amend at 2, ECF No. 4-26.)  The court did not address whether the due process allegations are sufficient to satisfy the stigma-plus standard of Paul v. Davis, discussed below.

Gardner asserts that this Court should not even pause to consider the merits of his pleadings because the state court was willing to let them proceed to discovery and the defendants should not get a second bite of the apple.  However, the law of the case doctrine simply "directs a court's discretion," without limiting its power.  Harlow v. Children's Hosp., 432 F.3d 50, 55 (1st Cir. 2005).  In this particular scenario, it is appropriate to reconsider the challenges to the federal claims in light of the fact that this Court's jurisdiction turns on their viability.

**THE FEDERAL CLAIMS**

A motion to dismiss for failure to state a claim is ordinarily evaluated in light of the allegations contained within the four corners of the plaintiff's complaint. Young v. Lepone, 305 F.3d 1, 10-11 (1st Cir. 2012). Gardner's complaint asserts the following material allegations in connection with the federal claims. For present purposes, the allegations are accepted as true.

Plaintiff Lowell Gardner has been an instructor in the Automotive Technology Department at Eastern Maine Community College for five years. (Am. Compl. ¶ 6.) The College is a state chartered college. (Id. ¶ 5.) Defendant Lawrence Barrett is the College's president. (Id. ¶ 3.) Defendant Kim Ehrlich is its human resources officer. (Id. ¶ 4.) As the College's HR officer, Ehrlich is responsible for overseeing union grievances filed against the College. (Id. ¶ 83.) Defendant Richard Thomas is another instructor in the Automotive Technology Department, hired sometime in the fall of 2011. (Id. ¶¶ 2, 11.) Thomas harbors personal animus toward Gardner. (Id. ¶ 13.)

On November 15, 2011, President Barrett held a meeting with Gardner and others to discuss concerns and unspecified issues involving the Department raised by Gardner and some students. (Id. ¶ 83.) Gardner offered to settle his undisclosed "differences" with Thomas if Thomas would apologize to Gardner in front of the automotive students about some undisclosed matter. (Id. ¶ 84.) Thomas subsequently indicated there was no way he would apologize in front of the students. (Id. ¶ 85.)

On November 28, 2011, or thereabouts, Thomas filed a written complaint with the College's academic dean, accusing Gardner of an undisclosed wrongdoing. (Id. ¶ 19.) Gardner, however, did no wrong. (Id. ¶ 20.) What Gardner says of Thomas's complaint is that Thomas claimed he was being subjected to a hostile work environment. (Id. ¶ 86.) Based on Thomas's

complaint, President Barrett commissioned an investigation of what was happening in the Automotive Department.  (Id. ¶ 87.)  The report did not issue until February 2012.  Barrett later disciplined Gardner, claiming reliance on the investigator's report.  (Id. ¶ 88.)

On February 16, 2012, Gardener received "a disciplinary letter / oral reprimand."  (Id. ¶ 22.)  Roughly an hour later, Thomas confronted Gardner as Gardner entered a classroom and Thomas stated, "Your fucked," in reference to the disciplinary warning.  (Id. ¶¶ 24, 89.)  Then, Thomas falsely reported to administration that Gardner had instigated a confrontation in which Gardner behaved in a hostile, disruptive, and unprofessional manner.  (Id. ¶¶ 26, 27.)  This, Thomas did, maliciously intending to injure Gardner in his profession.  (Id. ¶¶ 28, 37.)

While engaged in his efforts to injure Gardner, Thomas was working as a state employee acting under color of state law.  (Id. ¶ 74.)  Gardner alleges that Thomas (whom he necessarily sues in his personal capacity only) deprived him "of a liberty interest without due process" by so disparaging him.  (Id. ¶ 76.)  This is the basis of Gardner's federal claim against Thomas (count VII).

Meanwhile, on February 27, 2012, Gardner filed a grievance in which he asserted that the College failed to follow a process outlined in the union contract that required he be notified of a complaint against him and provided with a chance to respond.  (Id. ¶ 90.)  On April 2, 2012, Barrett notified Gardner by letter that he was issuing an "oral reprimand" against Gardner because Gardner allegedly "involved students and at least one other employee, exacerbated the issue [with Thomas] and thereby interfered with the academic and administrative operations of the College."  (Id. ¶ 92.)  Gardner filed another grievance that same day because he did not involve any student or other employee in the matter.  (Id. ¶ 93.)  On April 19, 2012, Barrett issued a written reprimand to Gardner saying Gardner acted with hostility and aggression toward

Thomas and had been untruthful concerning something recorded on a security tape. (Id. ¶ 94.) That same day Gardner filed another grievance because Barrett's statements were not accurate. (Id. ¶ 95.) On May 24, 2012, Barrett issued another written reprimand against Gardener for using profanity in the presence of a maintenance worker. (Id. ¶ 96.) Gardner once more filed a grievance because the same maintenance worker had repeatedly used profanity in front of Gardner and had never indicated to Gardner that he regarded the use of profanity to be offensive. (Id. ¶ 97.) Barrett and Ehrlich have repeatedly delayed and refused to arbitrate Gardner's grievances, though arbitration is required by the union contract. (Id. ¶¶ 98-99.)

Based on these underlying allegations, Gardner asserts a claim of First Amendment retaliation against Barrett and Ehrlich, explaining that "repeated unfounded disciplinary action" was a form of retaliation for his complaint against Thomas and was intended to interfere with Gardner's efforts to seek redress of his grievances. (Id. ¶ 100.) This is the federal claim against Barrett, Ehrlich, and the College (count VIII).

## DISCUSSION

Because all of the parties in this action are residents of the State of Maine, this Court's subject matter jurisdiction depends on the existence of a federal claim. For reasons that follow, Gardner's amended complaint fails to state a plausible claim of either a due process violation or first amendment retaliation. Because those are the only federal claims removed to this Court, the Court could remand the case to the Maine Superior Court after dismissing the federal claims.

### A.     Legal Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a plaintiff must set forth (1) "a short and plain

statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face." Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). A plaintiff's complaint need not provide an exhaustive factual account, only "a short and plain statement." However, the allegations must be sufficient to identify the way in which the defendant was harmed and to support a reasonable inference that the defendant is liable for the harm. Iqbal, 556 U.S. at 678.

**B.     Due Process Claim**

In count VII, Gardner advances a due process claim against, exclusively, Thomas. The parties' memoranda are focused on the issue of whether Gardner's amended complaint states a due process claim premised on defamation by a fellow employee and resulting reprimands by college administration. The legal standard is the so called "stigma plus" standard set forth in Paul v. Davis, 424 U.S. 693 (1976). The defendants assert that there is no "plus" in this case because the only viable plus would have to be something on the order of termination, which has not been alleged. (Defendants' Motion at 4-6, ECF No. 13.) Gardner responds (but does not allege in his amended complaint) that Thomas's false statements have caused Gardner to suffer, in addition to the reprimands described in the amended complaint, transfer to a department where

he has no seniority and warnings that he is subject to termination for further infractions. (Plaintiff's Response at 10.)  For reasons that follow, Gardner's amended complaint is wanting in allegations describing either "stigma" or the kind of "plus" that would satisfy the stigma-plus standard.  Additionally, and more fundamentally, Thomas, as a co-employee, is not a suitable stand-alone defendant on a due process claim.

   1.   *Stigma-plus*

In Paul v. Davis, the Supreme Court held that a claim of defamation cannot support a section 1983 claim for violation of the Due Process Clause of the Fourteenth Amendment simply because the tortfeasor acted under color of state law.  424 U.S. at 698, 712 (involving police distribution of a flyer that identified the claimant/respondent as an active shoplifter).  The Court observed that there is "no specific constitutional guarantee safeguarding" one's reputation, id. at 700, and that "reputation alone" is neither a property interest nor a liberty interest entitled to predeprivation procedural protection under the Due Process Clause, id. at 701.  Recounting some of its earlier precedent, the Court summarized that it had "never held that the mere defamation of an individual . . . was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment," though some language used in earlier decisions suggested otherwise.  Id. at 706, 707-708.  Discussing in particular its holding in Board of Regents v. Roth, 408 U.S. 564 (1972), the Court emphasized that to rise to the level of a constitutional injury defamation of a public employee would have to be accompanied by termination or refusal to rehire;  that "[c]ertainly there is no suggestion in Roth . . . that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee." Id. at 710.

7

Despite these grounding principles, the Court went on to observe "that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause," and that a state's decision to change a person's status in relation to such interests could require procedural due process. Id. at 710-11. As examples, the Court cited its own precedent involving the revocation of a driver's license or the revocation of parole. Id. at 711. The Court held that the respondent in Paul v. Davis could not demonstrate such a loss of status because his claim involved, exclusively, an injury to reputation and reputation is not the sort of thing that state law guarantees the enjoyment of. Id. at 711-712.

Paul v. Davis gave rise to a "stigma-plus" rule designed to measure due process claims involving reputational injury and its impact on employment or like status. "To use the popular catch phrase, the complaining party must satisfy a 'stigma plus' standard." URI Student Senate v. Town of Narragansett, 631 F.3d 1, 9 (1st Cir. 2011). Left for lower courts to determine was whether a state employee might maintain a due process claim premised on employment-related reputational injury if the reputational injury also results in an occupational harm falling short of termination for cause. One First Circuit opinion is particularly instructive here, in my view. In Beitzell v. Jeffrey, 643 F.2d 870 (1st Cir. 1981), the First Circuit held that a university professor did not have a property interest in obtaining tenured status, though the denial of tenure meant his probationary period of employment would end. Id. at 875-76. Concerning reputational injury as a form of liberty deprivation, the Court reasoned that no "constitutionally protected interest" was shown by the professor plaintiff where he remained free to seek other public employment and the negative assessment of his tenure application did not impose any special stigma, but concerned

8

merely the ordinary incidents of a merits evaluation common "to many, if not all, decisions" to hire, promote, or discharge an employee. Id. at 878.

Here, Gardner remains employed by the College. The most that can be said, based on a reading of the amended complaint, is that Gardner experienced certain reprimands from administration arising out of a power struggle he had with a fellow instructor. Those reprimands were based, according to the amended complaint, on aspersions voiced by the fellow instructor and unfair characterizations of Gardner's response. There is nothing in the amended complaint that would suggest anything more than the ordinary incidents of a departmental feud refereed by the college administration in the usual way. That is not sufficient to demonstrate "stigma" of a constitutional order, let alone "stigma-plus." As for the "plus" of losing seniority based on a transfer to a different department, the assertions about the transfer and related loss of seniority are not found in the amended complaint and the motion to dismiss is evaluated based on the allegations in the amended complaint, not based on assertions raised by counsel exclusively in a memorandum. In any event, for reasons outlined in the next section, a due process claim advanced solely against a co-employee simply is not viable.

  2.  *Improper due process defendant*

In Hawkins v. Rhode Island Lottery Commission, 238 F.3d 112 (1st Cir. 2001), the First Circuit considered whether the appellant, the former director of the state lottery commission, could maintain a stigma plus claim against Rhode Island's governor, among others, where certain reputation-harming statements were voiced by the governor, but the decision to terminate employment was separately exercised by the lottery commission. The Court held that the action could not be maintained against the governor because, although he voiced the disparaging

remarks, he lacked the authority to terminate the appellant, while the entity that enjoyed that power, the commission, was by law "fiscally and operationally autonomous." Id. at 115-116.

So it is here. Although Thomas is the alleged author of the defamatory statements, other defendants *who are not named in count VII* held the authority to impose any resulting sanction or punishment. The decision to issue reprimands could not be made by Thomas. Moreover, even if there could conceivably be some basis for inferring that Thomas unduly influenced the decision-making process, the fact is that Thomas, quite plainly, was not in any position to provide Gardner with predeprivation procedural due process and is, consequently, not an appropriate defendant in a procedural due process claim. For this reason alone, the Court should grant summary judgment against count VII.

### C.     Retaliation for Petitioning in Redress of Grievances

In count VIII, Gardner advances a first amendment retaliation claim against the college administration defendants.[2] The defendants say that Gardner's petitioning activity (his grievances) cannot support his claim because that activity did not address a matter of public concern. (Defendants' Motion at 7-8.) Gardner responds with a contrary assertion, once again relying on factual assertions that are not contained within the four corners of his amended complaint. (Plaintiff's Response at 7-8.) He argues that a "determination of whether speech is of a 'public concern' cannot be made until the whole record is developed." (Id. at 9.)

---

[2] He also asserts the claim against the College, which is either an arm of the State and therefore not a "person" subject to section 1983 liability, or the equivalent of a municipality, which can only be held liable for an employee's conduct if the conduct occurred as a result of a custom or policy. See Fantini v. Salem State College, 557 F.3d 22, 33 (1st Cir. 2009) (citing Kaimowitz v. Board of Trustees, Univ. of Ill., 951 F.2d 765, 767 (7th Cir.1991) (finding that, as neither the state nor its "alter ego" (state university) is a "person" for section 1983 purposes, neither is subject to suit under section 1983)); Freeman v. Town of Hudson, 714 F.3d 29, 37-38 (1st Cir. 2013) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("A municipality cannot be held liable solely because it employs a tortfeasor.")). In either event, the College cannot be held liable under section 1983 on the basis of respondeat superior.

The threshold issue in claims of this kind is whether the public employee plaintiff "spoke as a citizen" about a matter of public concern or as a professional concerning official duties. O'Connell v. Marrero-Recio, 724 F.3d 117, 123 (1st Cir. 2013); see also Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011). This is "determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). If the statement concerns official duties, then there is no first amendment claim because "restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). Similarly, if the statement at issue merely gives voice to a personal grievance about work conditions, it will not support a claim. "The right of a public employee under the Petition Clause [or the Free Speech Clause] is a right to participate as a citizen, through petitioning [or free speech] activity, in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts." Borough of Duryea v. Guarnieri, 131 S. Ct. 2488, 2501 (2011) (alterations added).

The issue of whether speech relates to a public concern is ordinarily a question of law for the court to resolve. Nethersole v. Bulger, 287 F.3d 15, 18 (1st Cir. 2002). Thus, in O'Connell, the First Circuit affirmed the entry of summary judgment against a first amendment retaliation claim brought by a public employee who alleged retaliation based on her expression of "reluctance to undertake personnel-related actions that she deemed either illegal or unethical." 724 F.3d at 123. Because the plaintiff's speech was expressed "exclusively to fulfill her responsibilities" as a human resources director the Court held that it could not support a claim, explaining that it was "the quintessential example of speech that owes its existence to a public employee's professional responsibilities." Id.

11

The factual allegations that are contained in Gardner's amended complaint indicate that Barrett held a meeting on November 15, 2011, attending by Gardner and some students, to discuss concerns voiced by Gardner and the students related to the Automotive Department, including discussion of some affront committed by Thomas for which Gardner demanded a public apology. (Am. Compl. ¶¶ 83-84.) Although it has been said that evaluating public versus professional/personal speech presents a tricky issue, particularly in the context of a motion to dismiss, Decotiis, 635 F.3d at 26, Gardner's minimal factual allegations simply are not sufficient to support a plausible (non-speculative) inference that Gardner spoke out as a public citizen on a matter of public concern rather than as an instructor with a professional interest in the operation of the Automotive Department and a personal interest in his standing within the Department.

The law, which is nuanced, requires a court to "take a hard look at the context of the speech." Decotiis, 635 F.3d at 32. A complaint is sufficient for pleading purposes if it "alleges facts that plausibly set forth citizen speech." Id. at 35. Here, Gardner simply has not supplied the sort of allegations that would enable the Court to meaningfully assess whether he spoke as a public citizen on a matter of public concern. From all appearances suggested by the amended complaint, Gardner's speech concerned a professional/personal issue he had with respect to his fellow instructor, Thomas, and their relative standing in the Department. This, in time, grew into a disciplinary matter that Gardner repeatedly grieved. However, "An employee may not transform a personal grievance into a matter of public concern by invoking the public's interest in the way the institution is run." Ramsey v. Bd. of Regents of the Univ. Sys., __ Fed. App'x __, No. 13-11833, 2013 U.S. App. LEXIS 22538, at *5, 2013 WL 5932000, at *2 (11th Cir. Nov. 6, 2013) (unpublished opinion). Speech "calculated to redress personal grievances" will not support a first amendment retaliation claim. Ruotolo v. City of New York, 514 F.3d 184, 189

(2d Cir. 2008) (quoting second circuit precedent). "[A] purely personal grievance is not a matter of public concern." Brooks v. Arthur, 685 F.3d 367, 373 (4th Cir. 2012).[3]

The trouble here is that a plausible inference of something more than a personal grievance or professional dispute over work conditions and departmental influence is inhibited by the very limited allegations, all of which strongly suggest that Gardner was pursuing personal and professional objectives. Although Gardener suggests the existence of additional underlying facts in representations made by counsel in his memorandum (such as whether Thomas had sufficient knowledge of core curriculum, whether Thomas should have been hired in the first place, and whether the College was providing real vocational/technical training[4]), as actually alleged, Gardner's amended complaint does not state a plausible basis for inferring that he spoke out as a member of the public on a matter of public concern. Given the allegations found in Gardner's amended complaint, I recommend that the Court dismiss the first amendment retaliation claim against the College, Barrett, and Ehrlich.

**D.    Negligent Infliction of Emotional Distress**

The defendants also challenge Gardner's NIED claim. However, should the Court accept my recommendation about the two federal claims, no federal claim will remain in this removed action and remand of the supplemental state law claims to the state court would be the most appropriate next step. See 28 U.S.C. § 1367(c)(3); Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the

---

[3]    But see LeFande v. District of Columbia, 613 F.3d 1155, 1162 (D.C. Cir. 2010) ("[T]he presence of a personal motivation for an employee's speech, although certainly a factor in the public-concern analysis, need not destroy the character of a communication as one of public concern. . . . Indeed, it may be that those employees who are dissatisfied with their workplaces are precisely those who are likeliest to notice malfeasance, and be willing to speak up about it.") (quoting additional D.C. circuit precedent). The instant pleading does not include allegations of institutional malfeasance or other matters that would be of public concern.
[4]    Even these representations powerfully suggest speech of a personal and professional nature rather than public speech on a matter of public concern.

13

dismissal without prejudice of any supplemental state-law claims."). For this reason, I believe it is advisable not to reconsider the state court's assessment of the state law claim, even though Gardner has not attempted to explain why his NIED claim states a claim for which relief may be granted.

## CONCLUSION

For reasons set forth above, I recommend that the Court GRANT Defendant's Motion to Dismiss (ECF No. 13), solely with respect to the federal claims (count VII and count VIII), and REMAND the supplemental state law claims to Penobscot County Superior Court.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 18, 2013